Sigfrido Ramon BREA, Petitioner,

v.

Scott MECHKOWSKI, et al., Respondents.

15-cv-7681 (AJN)

United States District Court, S.D. New York.

Signed 01/13/2016

Paige Austin, The Bronx Defenders, Bronx, NY, for Petitioner.

Brandon Matthew Waterman, United States Attorney's Office, New York, NY, for Respondents.

## ORDER

ALISON J. NATHAN, District Judge:

On September 29 2015, Petitioner Sigfrido Ramon Brea filed a Petition for Writ of Habeas Corpus requesting that the Court order his release or require Respondents to provide him with a bond hearing. *See* Dkt. No. 1. Brea had been detained by the Department of Homeland Security ("DHS") in March, 2015, and was charged with being deportable on the basis of a prior criminal conviction. *Id.* at 2.

On October 28, 2015, the Second Circuit issued a decision in which it held that individuals, like Brea, who are detained for longer than six months while awaiting removal proceedings are entitled to a bond hearing. *See Lora v. Shanahan,* 804 F.3d 601 (2d Cir.2015). Accordingly, the Court ordered Respondents to show cause why the Court should not grant Brea's petition and order that he be given a bond hearing. *See* Dkt. No, 4. In light of the Court's order, Respondents submitted a letter indicating that Brea had already been scheduled for a bond hearing and requesting that the Court defer consideration of Brea's petition on the grounds that it would soon be moot. *See* Dkt. No. 6. After

a brief delay, it appears Brea was indeed granted a bond hearing and was released from custody on December 17, 2015, on $7,500 bond. Dkt. No. 10 at 1. The Government reserved its right to appeal the bond decision to the Board of Immigration Appeals ("BIA"). *Id.* at 1.

■ The parties submitted a joint letter to the Court on December 18, 2015, updating the Court on the status of the case, but also indicating that they disagreed over whether Brea's habeas petition had become moot. *Id.* Brea requested that the Court hold his case in abeyance until the BIA decides any appeal (or until the Government's 30–day window for appealing the bond decision closes), and in the alternative that the Court's dismissal order indicate that Brea may reopen his case if his custody situation changes. *Id.* at 2. The Government filed its response on December 22, 2015, and opposed Brea's request. Dkt. No. 12. It argued that, because Brea has received a bond hearing and has been released, there is "no longer a 'live' case or controversy" nor "any relief left for this Court to grant." *Id.* at 1. The Court agrees with the Government and dismisses Brea's habeas petition as moot.

■ "In order to satisfy the case-or-controversy requirement [of Article III], a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Williams*, 475 F.3d 468, 478–79 (2d Cir.2007) (quoting *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir.1999)). Accordingly, as a general matter, "if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case." *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir.2006) (internal quotation marks and citations omitted). Here, because Brea has received a bond hearing and has

been released from custody, he has already been awarded the relief he requested in his habeas petition. *See* Dkt. No. 1 at 16–17. Brea thus does not have an injury that could be redressed by additional relief from the Court at this time, and there is no longer a live case or controversy.

■ Brea maintains, however, that his case is not moot "[b]ecause his detention by the Government is capable of repetition." Dkt. No. 10 at 1. The "capable of repetition, yet evading review" exception to the doctrine of mootness is a narrow one, and it requires two conditions to be "simultaneously present"—first, the challenged action must be too short in its duration "to be fully litigated prior to its cessation or expiration," and second, there must be "a reasonable expectation that the same complaining party would be subjected to the same action again." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 85 (2d Cir.2005) (quotation marks and citations omitted). Brea cannot make the showing necessary to avail himself of this exception because the "challenged action" here was the "holding [of] Mr. Brea *without an opportunity for an individualized bond hearing.*" Dkt. No. 1 at 9 (emphasis added). Whatever comes of the Government's decision to appeal (or not) the bond *determination* made by the immigration judge in this case, the Government cannot undo the existence of the bond hearing in the first place. Brea may be concerned about the risk that the BIA will view the merits of his case differently (though he has provided no reason to believe that possibility is more than speculative), but an unfavorable decision from the BIA would not be the same as a detention without process. In fact, it would be the opposite, as it would occur as part of the very process that Brea sought in his petition.

Brea cites two cases for the proposition that his case is not moot. First, he points to *Farez–Espinoza v. Napolitano*, No. 08–CV–11060 (HB), 2009 WL 1118098, at *7 (S.D.N.Y. Apr. 27, 2009), where the court held that an alien's habeas petition was not moot because the Government maintained that it had "authority to revoke the bond and re-detain her." Here, by contrast, the Government has defended only its authority to appeal the bond determination—it has not suggested that it can detain Brea at will. Second, Brea cites the Third Circuit case of *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir.2011), where the court considered the same issue the Second Circuit decided in *Lora. See Lora*, 804 F.3d at 614 (discussing *Diop*). Like the Second Circuit, the court in *Diop* held that detainees like Brea are entitled to some form of individualized review after a prolonged detention. 656 F.3d at 235. But unlike the Second Circuit, the Third Circuit declined to set a bright line for when a detention without a bond hearing becomes unreasonable. *Compare id, with Lora*, 804 F.3d at 614–15.

Before the Court in *Diop* could reach the merits, however, it had to decide whether the petitioner's case was moot, given that he had already been released from detention. *Diop*, 656 F.3d at 226. In holding that the case was *not* moot, the Third Circuit emphasized that the petitioner had needed to wait for his challenge to the allegedly unlawful detention to "ripen," which had only occurred after "some unspecified time that is notoriously hard to pinpoint." *Id* at 227 (quotation marks and citation omitted). In other words, because a petitioner's challenge to his detention without a hearing can only succeed after his detention has gone on for an "unreasonable" amount of time, and because that length of time is difficult to pinpoint, the court concluded that the mootness doctrine

would doom most challenges to pre-removal detention. *Id.* In this circuit, however, there is a bright-line rule that a petitioner is entitled to a bond hearing after six months of detention. *Lora*, 804 F.3d at 606. Accordingly, a petitioner's challenge to the lawfulness of his detention is not "a moving target" the way it might be in the Third Circuit. *Diop*, 656 F.3d at 227. There is thus no comparable risk that an unlawful detention of Brea could escape review, and his habeas petition must be dismissed as moot.

For the foregoing reasons, Brea's habeas petition is DISMISSED.[1] The Clerk of Court is instructed to close the case.

SO ORDERED.

---

1. This dismissal does not prejudice Brea's right to file a future habeas petition.